UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CLIFFORD HOLLY                                                          Plaintiff

v.                                                      Civil Action No. 4:23-cv-00020-RGJ

CHARTER COMMUNICATIONS, LLC                                          Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Charter Communications, LLC'S ("Charter") moves for Summary Judgment. [DE 41]. Plaintiff Clifford Holly ("Holly") responded [DE 42] and Defendant replied [DE 47]. Charter also moves to strike [DE 46] Holly's Declaration in support of his response to the Motion for Summary Judgment [DE 42-6]. Holly responded [DE 50] and moves for "Leave to File Original Declaration Instanter." [DE 51]. These matters are ripe.  For the reasons below, the Court **DENIES** Charter's Motion to Strike [DE 46], **DENIES AS MOOT** Holly's Motion for "Leave to File Original Declaration Instanter" [DE 51], **DENIES** Charter's Motion for Summary Judgment [DE 41] as to Counts One and Two, and **DENIES** Charter's Motion for Summary Judgment [DE 41] as **MOOT** as to Counts Three and Four and **DISMISSES** Counts Three and Four as abandoned.

## I.     BACKGROUND

On or about August 10, 2012, Charter hired Holly for a temporary position in its warehouse. [DE 1 at 2]. On October 11, 2013, Charter hired Holly for full-time position as a warehouse lead in Evansville, Indiana. [DE 41 at 115].  Holly later transferred to Owensboro, Kentucky on March 31, 2016, and his job title changed to "Senior Warehouse Technician" on August 17, 2018. *Id*. His title change came with no new job duties. *Id*.

1

On or about March 1, 2022, Holly sustained an injury resulting in a diagnosis of Lumbar Radiculopathy, requiring lifting restrictions of twenty pounds. [DE 1 at 3; DE 42 at 914]. The cause of his injury, and whether it was sustained at work or at home, is in dispute. [DE 1 at 3]. Holly returned to work a week later where he requested, and was granted, a temporary accommodation. *Id*. His accommodation allowed Holly to perform his job exclusively within the materials warehouse, one of two areas in Charter's Owensboro facility. [DE 42 at 914]. Four months later, on or about May 20, 2022, Holly informed his supervisor, Kenneth Cline ("Cline"), that his temporary disability had become permanent, and he could no longer lift more than twenty pounds. [DE 42 at 914; DE 41 at 118]. Charter then initiated an Americans with Disabilities Act ("ADA") accommodation request. [DE 41 at 118].

On or about July 11, 2022, Holly met with Stephenetta Weathington ("Weathington") (HR), Cline (supervisor) and John Reams ("Reams") (Cline's supervisor). [DE 41 at 119]. There is disagreement about the exact tone and details of the meeting, but the parties discussed Holly's disability diagnosis, his status with the corporation, and other potential jobs within the company. [DE 41 at 119; DE 42 at 917]. Holly was informed at this meeting that if he was unable to find a new job in the company within 60 days his employment would end. *Id*. From March 1, 2022, to August 31, 2022, there were about fifty jobs available with Charter in or near Owensboro. [DE 41 at 120]. The available jobs included roles as a direct sales representative, store specialist, field technician, and store manager. *Id*. Holly had worked in warehouses for almost the entirety of his career. *Id*. The nearest warehouse related position was in Kansas City, Missouri. [DE 42 at 919]. Holly alleges that after notifying Charter and Cline of his permanent disability his treatment in the workplace changed. [DE 42 at 922]. He claims to have been excluded from conversations and that

his once friendly supervisor had turned "cold." *Id*. Before the end of the sixty days Holly had not been hired to another position with Charter and left the company in August 2022. [DE 42 at 122].

Holly timely sued in this Court alleging disability discrimination under the ADA, 42 U.S.C. § 12101 et seq. (Count One), failure to accommodate (Count Two), age discrimination under the ADEA (Count Three), and retaliation for filing workers compensation under Ky. Rev. Stat. Ann. § 342.197 (Count Four). [DE 1].

## II.     ANALYSIS

Because the outcome of the Motion to Strike [DE 46] has a bearing on the facts considered when reviewing the Motion for Summary Judgement [DE 41] and resolves the Motion for Leave to File [DE 51], the Court addresses the Motion to Strike [DE 46] first.

### A.  MOTION TO STRIKE [DE 46]

#### 1.     Standard

Generally, "[a] party cannot create a factual dispute by filing an affidavit, after a motion for summary judgment has been made, which contradicts earlier testimony." *Dotson v. U.S. Postal Serv.*, 977 F.2d 976, 978 (6th Cir. 1992) (*per curiam*) (citing *Gagne v. Nw. Nat. Ins.*, 881 F.2d 309, 315 (6th Cir. 1989)); *see also Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984). "If a witness, who has knowledge of a fact, is questioned during her deposition about that fact, she is required to 'bring it out at the deposition and [cannot] contradict her testimony in a subsequent affidavit.'" *Holt v. Olmsted Twp. Bd. of Trustees*, 43 F. Supp. 2d 812, 817 (N.D. Ohio 1998) (quoting *Reid*, 790 F.2d at 460). Put differently, "a party cannot avoid summary judgment through the introduction of self-serving affidavits that contradict prior sworn testimony." *U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 303 (6th Cir. 1998). Numerous courts have declared that self-

3

serving affidavits without factual support in the record will not defeat a motion for summary judgment. *See, e.g., Devine v. Jefferson Cnty., Kentucky,* 186 F. Supp. 2d 742, 744 (W.D. Ky. 2001), aff'd, 40 F. App'x 924 (6th Cir. 2002); *Jadco Enterprises, Inc. v. Fannon*, 991 F. Supp. 2d 947, 955 (E.D. Ky. 2014); *Syvongxay v. Henderson*, 147 F. Supp. 2d 854, 859 (N.D. Ohio 2001); *Wolfe v. Vill. of Brice, Ohio*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999) ("Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)). Such affidavits fail to create an issue of material fact. *Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003).

Although motions to strike are generally disfavored as a drastic remedy, the court "possesses considerable discretion in disposing of a Rule 12(f) motion to strike." *Brashier v. Manorhouse Mgmt., Inc.,* No. 3:20-CV-294-CLC-HBG, 2020 WL 12846638, at *1 (E.D. Tenn. Sept. 18, 2020) (quoting *Godfredson v. JBC Legal Grp., P.C.*, 387 F. Supp. 2d 543, 547 (E.D.N.C. 2005)). "Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." *Jewell v. Shelby Cnty. Gov't*, No. 13-2048-STA-DKV, 2013 WL 5306102, at *4 (W.D. Tenn. Sept. 20, 2013) (citing § 1382 Motion to Strike—Redundant, Immaterial, Impertinent, or Scandalous Matter, 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.)). When considering barring evidence due to lack of personal knowledge, "[t]estimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990).

Also, in the context of summary judgment, the Court generally views all facts and inferences drawn from the evidence in the light most favorable to the nonmoving party, but a party

may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).  The standard under Rule 56(c)(2) "is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Farnhurst, LLC v. City of Macedonia*, No. 5:13-cv-668, 2016 WL 524361, at *2 (N.D. Ohio Feb. 10, 2016) (citing *Foreward Magazine, Inc. v. OverDrive Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011)). "The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike." *Id*. (quoting Fed. R. Civ. P. 56 (2010 Advisory Committee comments)). The Court notes that generally, "a district judge considering a motion for summary judgment is to examine '[o]nly disputes over facts that might affect the outcome of the suit under governing law.'" *Tucker v. Rose,* 955 F. Supp. 810, 814 (N.D. Ohio 1997) (citing *Anderson*, 477 U.S. at 248). Thus "[a] court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter." *Id*. (citing *Anderson*, 477 U.S. at 249). Similarly, any Rule 56(c) objection to statements of non-material fact need not be determined by the Court.

## 2.    Charter's Request to Strike Holly's Full Declaration

Charter first attempts to strike the entirety of Holly's declaration ("Declaration") attached in support of his response to the Motion for Summary Judgment [DE 42-6] by alleging that this court does not allow electronic signatures under Joint General Order 21-1. [DE 46 at 747-48]. But Joint General Order 21-1 does not prohibit routine acceptance of valid electronic signatures such as the one provided in the declaration at issue. And the law typically draws no distinction between handwritten and electronic signatures. *See, e.g*., Ky. Rev. Stat. § 369.107(4) ("If a law requires a signature, an electronic signature satisfies the law."). Nor do most courts in this circuit. *See, e.g.,*

*York v. Velox Express, Inc.*, 524 F. Supp. 3d 679 (W.D. Ky. 2021); *Bradford v. Team Pizza, Inc.*, No. 1:20-cv-60, 2020 WL 3496150, at *8–9 (S.D. Ohio June 29, 2020); *Kilmer v. Burntwood Tavern Holdings*, LLC, 2020 WL 2043335, at *4–5 (N.D. Ohio Apr. 28, 2020); *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *6 (S.D. Ohio Aug. 10, 2017). The Motion to Strike the entire declaration under Joint General Order 21-1 is denied, and Holly's Motion for Leave to File Original Declaration Instanter is moot.

### 3.   In the Alternative, Charter's Request to Strike Paragraph Three of Holly's Declaration

In the alternative, if the Court declines to strike the Declaration [DE 42-6] as a whole, Charter moves to strike that paragraph three of the Declaration asserting that it includes inadmissible statements that contradict sworn deposition testimony. [DE 46 at 748]. *Edmondson v. Bell*, No. 4:19-CV-00078-JHM, 2021 WL 2096058, at *3 (W.D. Ky. May 24, 2021) (quoting *Reid*, 790 F.2d at 460). Paragraph three states:

> When performing work in the warehouse, Charter had two distinctly different areas of operation, the CPE warehouse and the materials warehouse. The materials warehouse required picking large orders and was done using a forklift, a machine that I had no issue operating. I could perform my job duties entirely independently and without doing any heavy lifting. Using a forklift prevented me from lifting over my designated restrictions, and I worked in this area without issue for more than five months. On the rare occasion that something needed to be lifted, another coworker would pick up the item, however, the majority of the work could be done via forklift by me alone. The warehouse technician role was most often a two-man job, and the team worked collaboratively to perform the work together. It was not uncommon for team members to work together to lift objects, perform tasks and do the warehouse jobs required of them collaboratively.

[DE 42-6 at 869, Holly Dec. ¶ 3,]. Charter specifically focuses on claims that Holly "could perform [his] job duties entirely independently and without doing any heavy lifting," and that he only needed to perform heavy lifting on rare occasions. [DE 46 at 748; DE 42 at 869]. To support this contention Charter points to several examples within the record where these statements are

supposedly contradicted. These examples include answering affirmatively when asked whether one of Holly's normal job duties prior to his restrictions involved heavy lifting, [DE 46 at 749 (citing DE 41-7, Holly. Dep. 36:15-20)], agreeing that under his job description Holly could be called to lift more than 20 pounds a day, [*Id.,* Holly. Dep. 88:21-90:16] and admitting that he had listed essential functions of his job that included work in the customer premises equipment ("CPE") warehouse on his ADA request form [*Id.*, Holly. Dep. 135:22-137:8].

While these statements from paragraph three of Holly's Declaration could be read as contradicting some statements within the record, they find support and clarification elsewhere in the record. At various points in Holly's deposition testimony, he states that "[m]ost of the heavy lifting was done with a pallet jack or a forklift. So, I was able to do my job without injuring myself" [DE 41-7 at 518, Holly Dep. 36:10-36:17]. Holly also states on the record in his deposition that Charter had asked him to run the materials warehouse on his own while a coworker was out for medical leave, [DE 42-2 at 880, Holly Dep. 55:03-55:12] and that from March to August 2022 he had operated the materials warehouse independently for weeks at a time despite his restrictions. [DE 42-2 at 877, Holly Dep. 34:06-35:23]. These on the record statements, made under oath during Holly's deposition, support contentions made in the affidavit that Holly "could perform [his] job duties entirely independently," and that Holly would rarely need to do heavy lifting since most of the heavy lifting could be done via forklift or pallet jack [DE 46 at 748;DE 42-6, Holly Dec. ¶ 3]. In the Sixth circuit "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Edmondson, 2021* WL 2096058, at 3. However, Holly is not plainly contradicting his prior deposition testimony as the statements contained in his declaration find support in the deposition.

This is more indicative of a genuine dispute of material facts than it is an attempt to insert sham testimony. The court will not strike the statements made in paragraph three.

### 4.     In the Alternative, Charter's Request to Strike Paragraph Ten of Holly's Declaration

Also in the alternative, Charter requests that paragraph ten of Holly's Declaration be struck as inadmissible hearsay and for lack of personal knowledge under Rule 56(c)(4).  Paragraph ten states:

> Throughout my employment, . . . another non-disabled warehouse technician, also worked in the warehouse with lifting restrictions when he had hernia surgery, but he was not told that he needed to find another role or be dismissed. Additionally, during the years of 2014-2016, [this other employee] requested a schedule change to be off nearly every Monday and Friday during the Summer months to be able to accommodate his child's baseball schedule. Charter's management complied with his request for a change in his work detail, and he performed this modified work assignment every year for nearly four years. This caused tension with the team, and myself and other team members expressed frustration about [this other employee]'s change in schedule and how it created a hardship within the warehouse. However, management continued to allow him to work this modified schedule every summer for the entirety of his child's high school baseball career.

[DE 42-6 at 870-71, Holly Dec. ¶ 10].

Per Fed. R. Civ. P. 56(c)(4), a declaration used to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated. First, Charter alleges that lines from the affidavit, such as a co-worker "was not told that he need[ed] to find another role or be dismissed," and "other team members expressed frustration" [DE 42 at 871] qualify as inadmissible hearsay. [DE 46 at 753]. As to the first, that a co-worker "was not told that he need[ed] to find another role or be dismissed," this is not hearsay under Fed. R. Evid 801(c). In fact, it is a not a statement at all under FRE 801, as it is not an assertion or nonverbal conduct of a declarant. Fed. R. Evid 801 (a)-(c). Holly has not asserted that he heard someone make such a statement, but rather that his co-worker

continued to work for Charter. Even if this were a statement, it would be a non-hearsay statement by an opposing party under Fed. R. Evid 801(d)(2). If it were a statement, it would have been offered against Charter, an opposing party, and was made by either the party itself, or by the party's employee, Kline, on a matter within the scope of that relationship while it existed. *Id. S*tatements made by an employee within the scope of their employment qualify as party statements for the hearsay exception under Fed. R. Evid 801(d)(2). *Wilson v. Budco,* 762 F. Supp. 2d 1047 (E.D. Mich. 2011*).* This entry will not be struck as hearsay.

The second statement, "other team members expressed frustration," is also not a hearsay statement. This observation by Holly in his Declaration is not a true statement of fact. Fed. R. Evid 801 (a)-(c). Rather, it is little more than an observation made of his co-workers. Rephrased slightly, it is a statement that his co-workers were frustrated, which falls short of hearsay. It is Holly's personal observations about his coworker's behavior. As such, it is not hearsay, and the court will not strike it from the record.

Charter also alleges that Holly lacked personal knowledge for these and other non hearsay statements made in paragraph ten of his Declaration. When reviewing sworn testimony for personal knowledge the Sixth circuit has held that it should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about. *Hickey*, 917 F.2d at 904. First, Charter alleges that Holly had insufficient personal knowledge that his coworkers were frustrated. The Court finds that there is a clear opportunity and foundation for this knowledge. Given the deposition testimony already in the record, which the Court has reviewed, Holly can likely testify at trial that he witnessed and observed the actions of his coworkers in what was a relatively close, and small work environment made up of just four warehouse workers. [DE 50 at 942]. Charter also alleges that

Holly has insufficient knowledge of the schedule, disability status, and work restrictions placed on his redacted coworker.  Again, based on the evidence observed by the Court, Holly can likely testify as to personal knowledge of these issues. There is ample opportunity to discuss such matters with his coworker, and many of the alleged statements, including lifting restrictions and schedules, would be readily and easily observable "with the small team of four individuals working within the warehouse." *Id*. A reasonable jury could find sufficient personal knowledge of any these statements for similar reasons. As a result, the Court will not strike Paragraph ten of Holly's Declaration.

For all these reasons, Charter's Motion to Strike [DE 46] is **DENIED**.

**B.      MOTION FOR SUMMARY JUDGMENT [DE 41]**

**1.      Standard**

Under Fed. R. Civ. P. 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. 242. The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. (discussing FED. R. CIV. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."

*Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party can meet its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(b).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co*., 475 U.S. at 586. Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989)

### 2.      Failure to Accommodate Claim (Count Two)

In a failure to accommodate claim, as Plaintiff, Holly bears the burden of (1) establishing that he is disabled; (2) is "otherwise qualified" for the position with or without accommodation; (3) that his employer knew or had reason to know about his disability; (4) that he requested an accommodation; and (5) that the employer failed to provide the necessary accommodation. *Watkins v. Shriners Hosps. for Child., Inc*., No. 5:18-CV-548-REW-MAS, 2020 WL 2309468, at

*6 (E.D. Ky. May 8, 2020). Charter only contests the claim that Holly is otherwise qualified to perform the essential functions of his job, and that Charter itself failed to provide a necessary accommodation. As such, this Court need only determine whether there was a genuine dispute of material fact as to these two elements.

i.       *Otherwise Qualified for the Position*

First, in their Motion for Summary Judgment Charter asserts that Holly is not otherwise qualified to perform the essential functions of his job, with or without accommodations. As the employer, Charter will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship on the employer. *Lemieux v. Louisville Metro Gov't,* No. 3:22-CV-151-RGJ, 2023 WL 8241569, at *2 (W.D. Ky. Nov. 28, 2023). A job function is essential if its removal would "fundamentally alter" the position. *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (citing 29 U.S.C. § 1630.2(n)). The determination of an essential function is highly fact specific. *Hoskins v. Oakland Cnty. Sheriff's Dep't,* 227 F.3d 719, 726 (6th Cir. 2000). Charter alleges that Plaintiff's disability preventing him from lifting more than twenty pounds disqualifies him from the job, and as such they are entitled to summary judgment.

According to Charter, one of the "required qualifications" of a senior warehouse technician is the "[a]bility to repetitively lift, carry, push and pull up to 80 lbs." [DE 41-2, at 144, Weathington Dec. ¶ 16; DE 41-2, at 237-241, Ex. A-8; DE 41-3, at 316, Kline Dec. ¶ 7; DE 42-2 at 882, Holly. Dep. 88:21-90:16]. For instance, "Senior Warehouse Technicians handle high volume items on a daily basis that also include reels of cable that weigh between 20 to 80 pounds." *Id*. [DE 41 at 134]. However, Holly cites specific facts within the record to counter this contention. According to the record, "[m]ost of the heavy lifting was done with a pallet jack or a forklift. So [Holly was]

able to do [his] job without injuring [himself]." [DE 42-2 at 877, Holly Dep. 36:10-36:17]. Holly also states on the record that Charter had asked him to run the materials warehouse on his own while a coworker was out for medical leave, [*Id.* at 880, Holly Dep. 55:03-55:12] and that from March to August 2022 he had operated the materials warehouse independently for weeks at a time with his restrictions [*Id.* at 877, Holly Dep. 34:06-35:23]. If proven true, these facts "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall,* 751 F.2d at 174). Taking the facts in the light most favorable to the nonmoving party, if Holly had previously been able to operate the position alone despite the current restrictions, and if it were true that the vast majority of heavy lifting could be done via lift, this would counter Charter's claim that lifting more than twenty pounds is an essential function of the job. A reasonable juror could find that Holly was otherwise qualified for the position of warehouse lead with or without reasonable accommodation, thus satisfying this element. Holly has presented a genuine dispute of material fact regarding the essential functions of his job that is left to the jury.

Charter also appears to allege that it is an essential function of the job to work in both the materials warehouse, and the CPE warehouse, two distinct worksites. [DE 41 at 136]. However, they fail to allege specific facts and cite to admissible evidence that indicate this is an essential job function of the warehouse. Moreover, Holly again points to facts in the record that if proven true, would refute working at both job sites being an essential function of the job. First, "at two prior points in his employment with the Defendant, Holly was also placed exclusively in the materials warehouse to comply with previous lifting restrictions." [DE 42-2, at 876, Holly Dep. 30:13-31:05]. Additionally, Holly cites to the record to show that "employees also required specific

13

placement in certain warehouses, and numerous other employees were permitted to forgo the company's rotation policy" including the redacted co-worker. [*Id.* at 877, Holly Dep. 39:05-39:16; DE 42-6, at 870; Holly Dec. ¶ 9]. Showing a common trend of similarly situated warehouse workers foregoing rotation between the two offices would undercut Charter's claim that it is an essential job function. For the above reasons, a genuine dispute of material fact exists as to the essential nature of rotating warehouse positions as well.  Thus, taking all facts and inferences in the light most favorable to Holly, a reasonable juror could find Holly was otherwise qualified for the position with or without accommodations.

*ii.     Failure to Provide Reasonable Accommodations*

Charter finally alleges that Holly's claim fails because they proposed a reasonable accommodation, which Holly rejected. [DE 41 at 134]. If an employee rejects a reasonable accommodation, the individual is no longer considered a qualified individual with a disability. *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008) (citation omitted); *see also Burns v. Coca-Cola Enter., Inc.*, 222 F.3d 247, 258 (6th Cir. 2000) (once an employee rejects a reasonable accommodation, the employer's duty to reasonably accommodate the employee is fulfilled). Charter alleges that they offered Holly the opportunity to apply to new positions within the company. [DE 41 at 133; DE 41-2 at 146, Weathington Dec. ¶ 22-23; DE 41-3 at 315, Kline Dec. ¶ 17]. Charter claims there were over fifty available positions [DE 41 at 120], and that Holly decided not to apply before leaving on his own. [DE 42-2 at 880-87, Holly. Dep. 57:17-58:3; 91:15-17; 145:12-21; 201:20-202:2; 206:1-12; 207:3-6]. Holly counters this, using the record to claim that he did not qualify for any of the open job positions within fifty miles. [*Id.* at 880, Holly Dep. 56:23-57:22; DE 42-6, Holly Dec. ¶ 9]. Holly contends that all the available positions required "sales, heavy lifting and ladder climbing, or advanced technical experience,"

14

which he claimed he was "either not qualified for as a twenty-year warehouse worker or unable to perform with his current restrictions." [DE 42 at 932; DE 42-6 at 869; Holly Dec. ¶ 4]. Holly also states that, contrary to Charter's claims, Wethington failed to send or discuss a single posting with Holly. [DE 42-6 at 869, Holly Dec. ¶ 4]. If this is true, whether Charter's actions qualified as a reasonable accommodation, and whether Holly was qualified for any such positions, is a matter of fact in dispute. It also creates a factual dispute around whether Holly truly declined such an accommodation, even if it is reasonable. As such, a genuine dispute of material fact exists that, when taking all inferences and facts in the light most favorable to Holly, could permit a reasonable juror to find a reasonable accommodation was not made.

Finally, Charter alleges that Holly's proposed accommodation is unreasonable, as it requires the elimination of an essential job requirement and the creation of an entirely new position. [DE 41 at 135]. As set forth above, a genuine dispute of material fact exists regarding the essential nature of heavy lifting and a warehouse rotation.  Thus, the Court must determine whether the requested accommodation requires the creation of a new position, and whether or not that is unreasonable. Holly bears the burden of showing that an "accommodation' seems reasonable on its face." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002), and Charter is correct that an employer need not create a new position to "reasonably accommodate" an employee. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (citation omitted). However, Holly claims that this is not a new position, but merely allowing the continuation of a position Holly already held and adequately performed with Charter's permissions for five months. [DE 42-2 at 877, Holly Dep. 34:06-35:23; DE 42-6, at ¶ 3, ¶ 7]. Furthermore, Holly, and others, had supposedly worked this same job with similar altered responsibilities on numerous occasions during his decade with Charter [DE 42-6, at 869, Holly Dec. ¶ 7, ¶ 10], and Holly's own supervisor (Cline) stated

that Holly "has enough work to do to take up a full day." [DE 42-5 at 733, Ex.4. Charter Emails]. Holly presents enough factual evidence that a jury could find this to be a reasonable accommodation, and not a request for a new position. Charter also fails to argue that this would cause undue hardship.[1] Since this accommodation seems reasonable on its face, there is a material dispute, and Summary Judgement is not warranted.

In sum, there is a dispute of material fact in all the challenged elements of Holly's failure to accommodate claim under the ADA. There are questions remaining for a trier of fact, and Charter's motion for Summary Judgment as to the claim in Court Two is **DENIED**.

### 3. Disability Discrimination Claim (Count One)

Disparate treatment arises from employers treating some people less favorably because of their protected characteristics and "require[s] a plaintiff [to] show proof of intentional discrimination*." Tchankpa v. Ascena Retail Grp., Inc.,* 951 F.3d 805, 818 (6th Cir. 2020) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) and *Anderson v. City of Blue Ash*, 798 F.3d 338, 363–64 (6th Cir. 2015)) (internal quotation marks omitted); *see also O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.,* 833 F. App'x 605, 619 (6th Cir. 2020) ("Disparate treatment and retaliation claims are indirect-evidence claims based on circumstantial evidence where the determinative issue is the employer's intent."). A disparate treatment claim is "evaluated under" the McDonnell Douglas "burden-shifting framework." *O'Donnell*, 833 F. App'x at 619 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)).

To establish a prima facie claim of disparate-treatment disability discrimination under the

---

[1]An "undue hardship is something ***greater*** than hardship, and an employer does not sustain his burden of proof merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Crider v. Univ. of Tennessee, Knoxville*, 492 F. App'x 609, 613 (6th Cir. 2012) (quoting *Draper v. U. S. Pipe and Foundry Co.,* 527 F.2d 515, 520 (6th Cir. 1975) (internal quotation marks omitted).

ADA, Holly must show that (1) he was disabled; (2) he was otherwise qualified for the job, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and 5) similarly situated employees were treated more favorably. *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007). Charter does not contest Holly's disability status, or their own knowledge. Additionally, the Court has already found a genuine dispute of material fact regarding Holly's qualifications. As such, we need only analyze whether there was an adverse employment action, and whether similarly situated employees were treated more favorably.

<i>i.    Adverse Employment Action: Constructive Discharge[2]</i>

"A constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Lopez v. S.B. Thomas, Inc*., 831 F.2d 1184, 1188 (2d Cir.1987) (quoting *Young v. Southwestern Sav. and Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975))). To demonstrate a constructive discharge, Plaintiff must show evidence to show that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) the employer did so with the intention of forcing the employee to quit. *Saroli v. Automation and Modular Components, Inc*., 405 F.3d 446 (6th Cir. 2005); *Logan v. Denny's, Inc*., 259 F.3d 558, 568 (6th Cir. 2001). However, the Sixth circuit has held that constructive discharge can take another form, when "an employer acts in a manner so as to have communicated to a reasonable

---

[2] Holly's constructive discharge claim is not barred for failure to exhaust administrative remedies. In the Sixth Circuit, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). Holly created the original EEOC Charge which alleged that he had 60-days to find another job and specifically mentioned constructive discharge, putting the EEOC on notice. Furthermore, the constructive discharge here was alleged within the complaint as part of the pleading for discrimination.

17

employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727–28 (6th Cir. 2014). In other words, "constructive discharge also occurs where, based on an employer's actions, 'the handwriting was on the wall and the axe was about to fall.'" *E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002).

Holly alleges that Charter's "firm deadline and lack of any other alternative jobs that Holly could accept created an environment that would compel any reasonable person to simply resign." [DE 42 at 935]. In their reply Charter does not deny that Holly was given a sixty-day period to find a new position or end his employment. They argue that termination or leave was not guaranteed as there were numerous available positions that Holly could apply for to continue working for Charter. [DE 47 at 775, Holly. Dep. 142:1-143:24]. However, the record indicates a material dispute regarding the availability of continued work with Charter, particularly whether Holly was qualified for such positions. According to Holly, all the available positions within fifty miles required "sales, heavy lifting and ladder climbing, or advanced technical experience," which he claimed he was "either not qualified for as a twenty-year warehouse worker or unable to perform with his current restrictions." [DE 42-2 at 880, Holly Dep. 56:23-57:22; DE 42-6 at ¶ 9]. It is undisputed that Holly had sixty days to find an alternative job within the company, and Holly can point to facts within the record that would allow a reasonable jury to determine there were no available jobs in Charter that Holly qualified for. There is enough in the record for a jury to find that the writing was on the wall, and a constructive discharge had occurred. *Univ. of Chicago Hosp.*, 276 F.3d at 332. Summary Judgment is not proper on this issue.

   ii.  *Similarly Situated Employees*

When considering whether an employee is "similarly situated," the Court looks to whether

they "dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Because each factor does not apply in every case, the Court must "look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 394 (6th Cir. 2008). "In the disciplinary context, employees are 'similarly situated' only if they have 'engaged in acts of comparable seriousness.'" *Waggoner v. Carlex Glass Am., LLC*, 682 F. App'x 412, 415 (6th Cir. 2017) (quoting *Wright v. Murray Guard, Inc*., 455 F.3d 702, 710 (6th Cir. 2006)).

Holly has identified a single similarly situated employee, a co-worker whose name has been redacted ("coworker"), who was treated more favorably by Charter. Charter contends that this coworker is not a valid comparator for three reasons. First, the purported schedule change requests are not comparable to Holly's request for a role change because "[r]equesting time off for baseball events in the summer is different from being accommodated with an entirely new position with different job requirements. [DE 47 at 777]. Second, even if Holly's contentions are true the two were treated similarly as each was permitted to do light work when granted temporary lifting restrictions. Third, the two were treated similarly, as neither was fired or forced to resign due to their accommodations.

Holly and coworker are similarly situated in many respects. They both worked under the same supervisor, Cline, in the same warehouse, and in the same position. [DE 42 at 936; DE 42-2 at 874, Holly Dep. 24:06-24:11]. The record also indicates that Holly had received generally positive reviews for his performance during his years with Charter, indicating that it is unlikely his

19

performance created a material difference between the two co-workers. [DE 42-2 at 884, Holly Dep. 98:6-98:09, 111:02-111:06]. Furthermore, Holly alleges that his coworker engaged in the same conduct, requesting light work and lifting accommodations [DE 42 at 936]. According to Holly, his non-disabled coworker was granted these lifting accommodations and permitted to do light work after he had Hernia surgery. *Id.*

The disagreement over whether Holly successfully identified a similarly situated employee receiving more favorable treatment largely rests on whether the conduct of Holly and his coworker were sufficiently similar. Although Charter argues that Holly's request for accommodation is more substantial than his coworker's family-based scheduling adjustment, Holly focuses on their similar previous lifting accommodations. [DE 42 at 936]. There is sufficient evidence on the record to show both had previously received similar lifting accommodations, and that Holly only received disparate treatment when his restrictions progressed to a disability. *Id.* Finally, since there is sufficient evidence in the record such that a reasonable jury could find constructive discharge,[3] there is evidence of favorable treatment of a nondisabled party as coworker was not subject to the same constructive discharge. It is possible that "reasonable minds could differ as to whether a preponderance of the evidence establishes that" Holly was treated more harshly than similarly situated employees. *See Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007), abrogated by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (*quoting St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993)). As such, Summary Judgment as to this issue is **DENIED**.[4]

**4. Abandoned Claims: ADEA Age Discrimination and Retaliation (Count Three and Count Four)**

---

[3] This issue was previously discussed in section *i. Adverse Employment Action.*

[4] Charter does not argue a non-discriminatory purpose under the *McDonell-Douglas* framework, nor does Holly show that this is mere pretext. As such, Summary Judgement is not warranted at this time based on the prima fascia case of disability discrimination.

In the Sixth Circuit a plaintiff is deemed to have abandoned a claim when they fail to address it in response to a motion for summary judgment. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *see Hicks v. Concorde Career Coll.,* 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys., Inc*., 65 F. App'x 19, 24–25 (6th Cir. 2003). Holly failed to address or provide support for his claims of age discrimination under the ADEA (Count Three) and retaliation for filing workers comp (Count Four) in his Response. Accordingly, the Court concludes that Holly abandoned his claims under Counts Three and Four and they are **DISMISSED**.

### III.     CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS**:

1. Charter's Motion to Strike [DE 46] is **DENIED**

2. Holly's Motion for Leave to File Original Declaration Instanter [DE 51] is **DENIED AS MOOT.**

3. Holly's claims as to Count Three, age discrimination, and Count Four, retaliation for filing workers compensation under Ky. Rev. Stat. Ann. § 342.197, are **DISMISSED** as abandoned.

4. Charter's Motion for Summary Judgment [DE 41] is **DENIED AS MOOT** as to Count Three, age discrimination, and Count Four, retaliation for filing workers compensation under Ky. Rev. Stat. Ann. § 342.197.

5. Charter's Motion for Summary Judgment [DE 41] is **DENIED** as to Count One, disability

discrimination, and Count Two, failure to accommodate.

Rebecca Grady Jennings, District Judge
United States District Court

October 3, 2024

22